ALBERT WOOLFENDEN ET AL. *vs.* GEORGE SHEA ET AL.

MALTBIE, C. J., HAINES, BANKS, AVERY and CORNELL, JS.

Argued June 14th—decided August 9th, 1932.

*John F. Chatfield,* for the appellants (defendants).

*Maurice E. Resnick,* for the appellee (plaintiff).

HAINES, J. The plaintiff and his wife, in a Ford automobile owned and driven by him, between nine

and ten in the forenoon of May 31st, 1931, were proceeding southerly on Route No. 312, so-called, a highway in the town of Norfolk, and had nearly reached the intersection of another highway known as Route No. 17, when the left side of his car was side-swiped by a Packard taxicab owned by the defendant Riiska and operated by his employee, the defendant Shea. Both the plaintiff and his wife were injured by the collision and the Ford car was badly smashed.

In the cab beside the driver was a member of the Winsted police force named Poole. They were endeavoring to overtake a Massachusetts car, the pursuit having begun in Winsted, and both cars proceeding at a high rate of speed to and through the town of Colebrook and into the center of Norfolk where Route No. 17 on which they were traveling, intersects Route No. 312 at approximately a right angle, which intersection the plaintiff was then approaching. Both highways were paved with cement and at the intersection the road was about fifty feet in width. The plaintiff saw the approaching cars and drew to the curb on his right and brought his car to a stop. In the endeavor to make the turn into Route No. 312 at high speed, the Massachusetts car skidded and narrowly missed the Ford, and the cab, which was following it closely, also skidded, and the left side of the cab came into violent collision with the Ford which was standing at the curb, causing various injuries to the plaintiff and his wife, and throwing the latter, a woman weighing more than two hundred pounds, through the doorway of the Ford car and onto a bank several feet away. Besides the injuries to the Ford car itself, the force of the impact broke the driving shaft of the cab and destroyed its braking system so that it ran, largely out of control, down the hill and part way up the hill beyond before it came to a stop.

It is not claimed that the plaintiff was in any way negligent, but the plaintiff claimed that both the Massachusetts car and the cab were going at an excessive and dangerous speed when they attempted to make the turn, estimated at about sixty miles per hour, and the cause of the collision was the inability of the cab driver to control his car and prevent the skid which brought it into collision with the plaintiff's car. The trial court found the cab driver guilty of negligence and that his conduct was in fact reckless and wanton.

The defendant Riiska, the owner of the cab, was engaged in the taxicab business, and the defendant Shea was employed by him to operate this Packard car in that business. At about nine-thirty on the morning in question, Shea was standing near his car while Poole the policeman was about half a block away on the corner of Main and Elm Streets in Winsted. The latter had received orders by telephone from his superior officer, to stop a car carrying Massachusetts license No. 299,119, and a moment thereafter, he saw such a car coming down Main Street, and after endeavoring unsuccessfully to stop it, he telephoned that fact to headquarters and was then instructed to get a car and follow and overtake the Massachusetts car. He went to where Shea was standing and entered the cab and with Shea as driver, took up the pursuit. There is no essential dispute as to these facts save as to the speed of the two cars when they attempted to round the turn at the intersection in Norfolk. There is sufficient evidence to justify the trial court's finding that the speed was about sixty miles per hour, though there was contradictory evidence upon that point.

The appellant, however, seeks to add to the finding certain facts from the draft-finding and strike out certain facts found. The most important of these claimed changes relates to the circumstances surrounding the

procuring of the cab by Poole and his alleged subsequent control thereof. The finding is that the town of Winchester had previously from time to time employed Riiska's cars and drivers in police work, the town paying Riiska therefor, and that Poole himself on several occasions, had hired and used this Packard cab of Riiska's with Shea as driver, in police work for the department. The defendants claimed that Poole "commandeered" Shea and the cab, but the trial court found that in fact the car was hired by Poole as on previous occasions. Any uncertainty on this point is largely removed by the transcript of the proceedings at the trial. The officer Poole had testified to the circumstances under which he obtained the cab, and near the end of his testimony, the following took place: "The Court: Do I understand Officer that after you received the call, that you went over and hired this Riiska car? Witness: Yes." It is conceded also that Riiska was in fact afterward paid by the town of Winchester for the services of Shea and the use of the cab on this very occasion, and also paid for the repair of the cab. We must accept the finding of the court on this point since it is amply supported by the evidence. Special consideration has been given to this feature of the case for it largely determines the legal status of the defendants. They base their main defense upon the claim that the cab and driver were commandeered, not hired, and that the defendant Shea was, at the time of the accident, "an involuntary arm of the state police power" and so protected in the performance of a governmental duty. The finding clearly shows that the town of Winchester by its agent Poole, hired this cab and its driver for the indicated purpose of overtaking the Massachusetts car. The cab was not put into the possession or control of Poole but both were retained by the defendant owner, Riiska, in the hands of his

agent employed for that purpose. Acting within the scope of his authority, Shea was endeavoring to carry out the purpose of the hiring, and in doing so, he assumed responsibility, both for himself and for his principal, Riiska, for any act of negligence which he might be guilty of. The legal relation between Riiska and Shea of principal and agent, was maintained throughout. The negligent act by which these plaintiffs were injured, was not committed by Shea under compulsion but was voluntary, and committed while he was carrying out the business of his principal within the scope of his authority as agent. His own responsibility and the responsibility of his principal therefor, follows from the application of the fundamental principles of the doctrine of *respondeat superior*.

No conclusion which might be reached by a discussion of any of the other assignments of error, could affect the result.

There is no error.

In this opinion the other judges concurred.